FIRST NATIONAL BANK *vs.* THE FAIRFIELD AUTO COM-
PANY ET AL.

Third Judicial District, Bridgeport, October Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In the absence of the evidence, a finding of fact by the trial court must
stand, unless it appears upon the record that it violates some prin-
ciple of law or is legally inconsistent with the subordinate facts
found.

In the present case the trial court found that the plaintiff bank, which
had purchased the note in question at its face value, had no knowl-
edge or notice of an arrangement between the original parties to
the instrument, whereby it was to be renewed from time to time
until the motor-trucks for which the note had been given had been
sold by the maker. *Held* that the circumstances connected with
the transfer of the note to the plaintiff, as detailed in the finding,
were wholly insufficient to warrant an inference of bad faith upon
its part in taking the note.

Submitted on briefs October 27th, 1916—decided January 5th, 1917.

ACTION by the indorsee against the maker and in-
dorser of a promissory note, brought to the Superior
Court in Fairfield County where a demurrer to the
amended counterclaim of the Fairfield Auto Company
was sustained (*Burpee, J.*) and the cause was afterward
tried to the court, *Case, J.;* facts found and judgment
rendered for the plaintiff for $2,754, and appeal by
the defendants. *No error.*

*Joseph G. Shapiro* and *Charles H. Shapiro,* for the
appellants (defendants).

*Carl Foster* and *Frederick E. Morgan,* for the appellee
(plaintiff).

RORABACK, J. The Superior Court has found that
the plaintiff, the First National Bank of Peru, and

the Brown Commercial Car Company, in August, 1913, were corporations located in Peru, Indiana; that at this time R. A. Edwards was the president of the First National Bank and a stockholder and director of the Brown Commercial Car Company. The Commercial Company at this time was engaged in the manufacture of automobile trucks in Peru, Indiana. The Fairfield Auto Company was a Connecticut corporation located in Bridgeport and was engaged in selling automobile trucks. On August 5th, 1913, the Brown Commercial Car Company sold to the Fairfield Auto Company a certain number of automobile trucks for $2,495 and took the Auto Company's note for that amount. This note was payable in two months and was indorsed by the defendant Gates. It was then transferred by the payee to the plaintiff for its face value. Upon the maturity of the note it was renewed or replaced by another for the same amount, of the same tenor, and with the same indorser. It was again renewed in this manner, and just before the last note became due a further renewal was requested. This the plaintiff refused to do. In the spring of 1913 there had been a large flood in Ohio and Indiana, and the business depression in that locality materially affected the Brown Commercial Car Company. Several directors' meetings of the Brown Company were held for the purpose of devising ways and means of continuing the business. Mr. Brown, president of the Brown Company, consulted with R. A. Edwards on numerous occasions. In August, 1913, prior to the fifth of that month, at a directors' meeting of the Brown Company, Mr. Brown was instructed to take a trip east in an endeavor to interest several prominent automobile agencies in the auto trucks. On the day prior to leaving on this eastern trip, Mr. Brown called on the plaintiff and discussed with Mr. Edwards the question as to whether

his bank would discount commercial paper in the event auto trucks could be sold to responsible parties. There was an arrangement between the defendants and the Brown Company, when the first note was given in payment for the auto trucks, that this note might be renewed if the trucks remained unsold by the Fairfield Company. The plaintiff had no knowledge of this arrangement. It discounted this note without reference to any private arrangement existing between the immediate parties to it. The note, which is now in suit, was duly protested at the City National Bank of Bridgeport.

The defendants in their answers averred that the note in question was made upon the condition that it was to be renewed until the auto trucks for which it was given were sold, and that the plaintiff had knowledge of this arrangement.

The trial court has found from the evidence that the allegation of notice to the bank was untrue. The evidence is not before us, and this conclusion of the trial court must stand unless the record shows that it violated some principle of law as to the legal duty of the parties, or in finding the ultimate fact from the subordinate facts set forth in the finding.

The principal reason of appeal relied upon in the defendants' brief and argument, is that the court below erred in ruling that the plaintiff had no knowledge of the agreement that the note was to be renewed until the motor trucks were sold, under an arrangement made between the original parties.

Our Negotiable Instruments Act provides that in order to entitle one to be regarded as a holder of an instrument in due course it must appear that at the time it was negotiated to the holder he had no notice of any infirmity in it or defect in the title of the person negotiating it. General Statutes, § 4222. This Act

also provides that "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is nego-. tiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." General Statutes, § 4226.

The plaintiff, as the holder, is to be deemed prima facie to be a holder in due course, but under the statute, when it is shown that the title of any person who has negotiated such an instrument was defective, "the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." General Statutes, § 4229.

There was no question as to the execution of the note in controversy. It appears that the plaintiff bought it for its face value before maturity. There is nothing in the record to show that the plaintiff had any express notice of the collateral agreement upon which the defendants now rest their defense. The notes contained no reference to this private arrangement now said to have been made by the original parties to the undertaking.

The only question which we are now to consider is whether the circumstances connected with the making and transfer of this note to the plaintiff were such as to charge the plaintiff with bad faith.

The principal fact relied upon by the defendants to sustain their contention, as to notice to the bank, was that Mr. Edwards was president of the plaintiff bank and also a director and stockholder in the Brown Commercial Car Company. It nowhere appears that Edwards knew or had any reason to think that the original note was to be given upon the agreement that it was to be renewed until the automobiles, which were sold to the Fairfield Company, were sold by it. Such a conclusion

cannot be drawn from the consultations which it appears were held between the president of the bank and Mr. Brown of the Commercial Company. It was not suggested at any of these interviews that the notes were to be given upon agreement as to the time and manner of payment. It does, however, appear that just before the first note was given, when Mr. Brown of the Commercial Company was about to leave Peru, Indiana, for the east, he discussed, with the president of the bank, whether or not the bank would discount commercial paper if automobile trucks could be sold to responsible parties.

One insurmountable difficulty with the defendants' contention is that it does not appear, either directly or indirectly, that the president of the bank had any knowledge of any such claims as the defendants now interpose against the collection of this note.

It also appears that such knowledge cannot be fairly inferred from any of the circumstances surrounding this transaction. Under such a state of facts it is a little difficult to understand how bad faith can be imputed to the plaintiff bank, because its president was also a stockholder and director in the Brown Commercial Car Company.

There is no error.

In this opinion the other judges concurred.